**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 18, 2017**

# In the Court of Appeals of Georgia

A17A0761. HARRIS v. THE STATE.

MERCIER, Judge.

In a bifurcated jury trial, Donald Harris, Jr. was found guilty of aggravated assault and possession of a firearm by a convicted felon. Following the trial court's denial of his motion for a new trial, and having been granted an out-of-time appeal by the trial court, Harris appeals the judgment of conviction entered against him. He contends on appeal that the evidence was insufficient to support the jury's verdicts, that the trial court erred in failing to charge the jury on the lesser included offense of reckless conduct, and that the trial court erred in sentencing him as a recidivist pursuant to OCGA § 17-10-7 (a). For the reasons that follow, we reverse Harris's conviction for aggravated assault and affirm his conviction for possession of a firearm by a convicted felon.

1. When examining the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and do not weigh the evidence or determine witness credibility; we determine whether a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of the charged offense. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). So viewed, the evidence at trial demonstrated the following.

The criminal charges against Harris in this case arose from an incident that occurred on May 19, 2015. Harris's cousin, Keyellow Johnson, testified that prior to that day, Harris was dating Johnson's friend April Kitchens. Kitchens accused Harris of molesting her daughter. Kitchens requested that Johnson meet her in a nearby town, where Kitchens was going to visit her child's father to tell him about the alleged molestation. Johnson did so, and when Johnson arrived home that day, several of Johnson's family members were standing in Johnson's mother's yard (which was adjacent to her own home). This group included, among others, Harris, Johnson's ten-year-old son , Johnson's seven-year-old nephew , and Harris's brother and sister, Edward Harris[1] and Carrie Fann. As Johnson approached her house, Edward Harris

---

[1] For clarity, Edward Harris will be referred to by his full name so as to distinguish him from Appellant Donald Harris, referred to herein as "Harris."

2

rushed to her car and prevented her from exiting, telling her not to get out of the car. Harris was behind Edward Harris. Johnson testified that Harris was "fussing," angry, and using profanity. Harris tried to unlock the doors and enter Johnson's car, and Edward Harris remained at the driver side window preventing Johnson from getting out of the car.

Shortly thereafter, Johnson heard someone screaming. Edward Harris then turned around, and when he did so, Johnson could see Harris "pointing a rifle" at Johnson's window and Fann (Harris's sister) "screaming because [she was] trying to get it from him." When Edward Harris turned around, "they all rush[ed] [Harris]." Johnson was afraid because Harris was angry and she thought that he might use the gun against her. She phoned the police, and Harris ran away.

Johnson's son testified at trial that Harris was at the driver's side door of Johnson's car, behind Edward Harris, and Edward Harris was "trying to block." Harris had a gun and pointed the gun at Johnson in her car, and Edward Harris was trying to take the gun away from Harris. Johnson's son was frightened and ran to the porch when this happened.

Fann , Harris's sister and Johnson's cousin, testified at trial that on the day in question, Fann met her brother Edward Harris at Johnson's mother's house, and Fann

3

and Edward Harris were planning to fire a rifle and were "just hanging out." Harris was upset about the accusation that he had molested Kitchens's daughter. When Johnson pulled into her driveway, Harris approached Johnson's car, and Edward Harris gave the rifle to Fann and went to Johnson's car "to calm [Harris]."

When asked if someone took the rifle from her, Fann testified that Harris approached her and the two "had a scuffle." When asked, she confirmed that Harris was fighting with her for the gun. Although Fann wasn't "sure if he actually took it, . . . when [she] felt that [she] was losing," she called for Edward Harris. When asked why she felt that she had to prevent Harris from getting the gun, Fann said, "[h]e was upset. Never know what may happen." The prosecutor asked, "why were you upset he was going to do something with the gun with regard to . . . Johnson? What was the problem? What led you to believe that if he got that gun he might do some harm to somebody?" Fann responded, "[h]e went over there into an altercation with [Johnson]."

Edward Harris testified as follows. On May 19, 2015, Harris was angry with Johnson and Kitchens regarding the molestation accusation. When Johnson came home, Edward Harris went out to her car because Harris was approaching it and Edward Harris wanted to prevent an altercation between Harris and Johnson. Edward

4

Harris gave Fann his gun and ran over to Johnson's vehicle, where Harris was yelling at Johnson. Edward Harris then heard Fann call for help, saw that she was struggling with Harris, and went to help her.

We disagree with Harris that "[t]here was no competent evidence introduced at trial that [he] intentionally pointed the gun at [Johnson], or that [he] was ever completely in possession of the gun." The evidence at trial included Johnson's testimony and that of her son describing Harris pointing the gun at Johnson's car window, Johnson's testimony describing Harris's angry behavior, the testimony from other witnesses describing Harris's anger, and testimony from Fann describing her fear about what Harris would do with the rifle. Thus, the evidence was sufficient for a reasonable jury to conclude that Harris took possession of the rifle and intentionally pointed it at Johnson, thereby assaulting her with the rifle. See *Short*, supra at 635 (1); OCGA § 16-5-21 (a) (2).

Harris's argument relies on conflicting evidence presented at trial regarding the details of the incident. He argues that, among other things, testimony from Edward Harris and from Fann demonstrate that Harris did not point the gun at Johnson. However, this Court is not tasked with weighing evidence or determining witness

credibility. *Short*, supra; *Westbrooks v. State*, 309 Ga. App. 398, 399 (1) (710 SE2d 594) (2011). The evidence at trial was sufficient to support Harris's convictions.

2. Harris contends that the trial court erred in failing to charge the jury on the lesser included offense of reckless conduct as an alternative to aggravated assault, as he requested. We are constrained to agree.

OCGA § 16-5-21 pertinently provides that "(a) A person commits the offense of aggravated assault when he or she assaults . . . (2) [w]ith a deadly weapon. . . ." The trial court instructed the jury as to both types of assault that could support an aggravated assault charge (attempting to commit a violent injury to another or committing an act that places another in reasonable apprehension of immediately receiving a violent injury). See OCGA § 16-5-20 (a). The indictment alleged in one count that Harris made an assault upon the person of Johnson with a rifle by pointing it at her, without specifying which of the two types of assault he committed. Harris contends that "the jury could have been allowed to consider the possibility that in fighting over the gun, [he] negligently pointed the gun at [Johnson]." At trial he requested that the jury be instructed on the lesser included offense of reckless conduct pursuant to OCGA § 16-5-60 (b), defined as

6

caus[ing] bodily harm to or endanger[ing] the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that [one's] act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

"[A]ny evidence that the defendant is guilty of the lesser included offense . . . mandates giving [a] requested written charge" on the lesser included offense. *Edwards v. State*, 264 Ga. 131, 132 (442 SE2d 444) (1994) (punctuation omitted); *Shaw v. State*, 238 Ga. App. 757, 758 (1) (519 SE2d 486) (1999) (physical precedent only) ("Slight evidence is sufficient to justify charging on a lesser included offense.").

It was undisputed at trial that Harris angrily confronted Johnson, that Edward Harris tried to block Harris's access to Johnson, that Harris tried to wrestle the rifle away from Fann during the confrontation, and that Johnson was afraid that Harris would use the gun against her. "If the victim reasonably fears an immediate violent injury from a firearm, the aggravated assault has occurred." *Shaw*, supra at 759 (1); see *Patterson v. State*, 332 Ga. App. 221, 228-229 (2) (b) (770 SE2d 62) (2015), aff'd, 299 Ga. 491 (789 SE2d 175) (2016) ("[I]f [the victim] reasonably feared an immediate violent injury . . ., the crime of aggravated assault occurred, not reckless

7

conduct."). Therefore, Harris was not entitled to a reckless conduct charge as a lesser included offense of aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (2) for committing an act which placed another in reasonable apprehension of immediately receiving a violent injury. See *Patterson*, supra; *Shaw*, supra at 758-759 (1).

However, we find that Harris was entitled to a reckless conduct charge as a lesser included offense of aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) for attempting to commit a violent injury to the person of another. Based on the testimony regarding the struggle between Harris, Edward Harris and Fann, the jury could have found that Harris pointed the gun at Johnson accidentally, and therefore endangered her by consciously disregarding a substantial and unjustifiable risk that his act or omission would cause harm to or endanger the safety of Johnson, and the disregard constituted a gross deviation from the standard of care which a reasonable person would have exercised in the situation. See OCGA § 16-5-60 (b). Though this evidence of reckless conduct was slight, it was sufficient to mandate the charge on the lesser included offense. See *Edwards*, supra; *Shaw*, supra at 758 (1).

A charging error is presumed to be prejudicial and harmful unless the record shows that it was harmless. *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988); *Shaw*, supra at 759 (1). Because the indictment in this case did not specify the type of assault underlying the aggravated assault charge, the jury received instructions on both types of assault, and there was some evidence in the record to support a conviction for aggravated assault based on either type of underlying assault (attempting to commit a violent injury to the person of another pursuant to OCGA § 16-5-20 (a) (1) or committing an act that places another in reasonable apprehension of immediately receiving a violent injury pursuant to OCGA § 16-5-20 (a) (2)), nothing in the record demonstrates that the jury convicted Harris of aggravated assault for putting Johnson in reasonable apprehension of immediately receiving a violent injury, rather than for attempting to commit a violent injury to her, with the rifle. Therefore, we cannot say that the trial court's failure to charge the jury on the lesser included offense of reckless conduct was harmless where the charge was warranted with regard to the offense of aggravated assault insofar as it was based on an underlying assault as defined in OCGA § 16-5-20 (a) (1). See *Foskey*, supra; *Shaw*, supra. Therefore, we must reverse for a new trial Harris's conviction for aggravated assault.

3. Finally, Harris contends that the trial court erred in sentencing him as a recidivist pursuant to OCGA § 17-10-7 (a). He argues that "[his] one conviction led to his probation being revoked, being given the maximum sentence to be served consecutively on the current case, and being given an additional five years of probation on the possession of a firearm by a convicted felon charge."

Harris's arguments relate mostly to his sentence on the aggravated assault conviction. First, he essentially asks this Court to ignore the ruling in *Hillman v. Johnson*, 297 Ga. 609 (774 SE2d 615) (2015), and find that the evidence of his prior felony conviction was "used up" in proving that he committed the offense of possession of a firearm by a convicted felon and could not be used in aggravation of his punishment on his aggravated assault conviction. Further, he argues that "there was no evidence in this case that the Court even considered" that the aggravated assault sentence could be probated These arguments are rendered moot by our holding in Division 2. However, we note that even if this Court were inclined to do so, we are not permitted to ignore precedent set by the Supreme Court of Georgia (See Ga. Const. of 1983 Art. VI, Sec. VI, Par. VI), and the transcript contradicts Harris's argument regarding the trial court's consideration of the permissible sentencing options.

10

Harris also argues that his sentence "should violate the Court's sense of due process and fundamental fairness." He does not contend that any portion of his sentence exceeds the statutorily prescribed parameters, and "[t]his [C]ourt is without authority to review sentences within the statutory range." *Trammell v. State*, 196 Ga. App. 540, 542 (3) (396 SE2d 286) (1990) (citations and punctuation omitted). Thus, even insofar as this argument pertains to Harris's sentence on the charge of possession of a firearm by a convicted felon, it presents nothing for our review.

*Judgment affirmed in part, reversed in part. Barnes, P. J., concurs. McMillian, J., concurs fully to Division 1 and concurs to judgment only in Divisions 2 and 3.*