**THIRD DIVISION**
**ANDREWS,**
**RICKMAN and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2018**

# In the Court of Appeals of Georgia

A17A1551. IN THE INTEREST OF K. D., et al., CHILDREN (FATHER).

BETHEL, Judge.

In this case, the father appeals from the Polk County Juvenile Court's order of final disposition and approval of his case plan with regard to K. D., F. S., R. S., and M. S., his minor children (the "children"), whom the juvenile court found to be dependent. On appeal, the father argues that there was insufficient evidence for the juvenile court to find the children dependent. The father also argues that the juvenile court erred in determining that he must be supervised when he spends time with his children during the pendency of his case. Because there was insufficient evidence in the record supporting the juvenile court's finding of dependency, we reverse.

On appeal from a lower court's finding of dependency, we review the record in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the children were dependent. *See In re A.B.*, 289 Ga. App. 655, 655 (1) (658 SE2d 205) (2008). So viewed, the record reflects that the Department of Human Services, acting by and through the Polk County Department of Family and Children Services (collectively, "DFCS") filed a complaint and petition for dependency in the juvenile court alleging, *inter alia*, that the children had been subject to a history of domestic violence, most recently involving an incident in which the father was arrested for pointing a gun at the children's mother. The complaint and petition also alleged that the family had previously refused services from DFCS, including domestic violence assessments and counseling for the children. The complaint and petition sought the entry of a court order establishing a case plan for the children.[1]

The children's mother, through her attorney, stipulated to a finding of dependency in her case based on the allegations in the DFCS complaint. Her stipulation provided that

---

[1] The children's mother was also named in the complaint and petition filed by DFCS. Her case, however, is not part of this appeal.

The children have been subjected to multiple incidents of domestic violence as perpetrated by the father against the mother; [t]he health and safety of the children cannot be assured in the home until the parents undergo domestic violence assessments and follow all resulting recommendations; and the oldest child, [K.D.] is in need of an evaluation to address his exposure to domestic violence.

Based on this stipulation, the juvenile court entered an order as to the mother finding the children dependent in that they had been neglected and abused, as defined in OCGA §§ 15-11-2 (2) and (48), and were in need of the protection of the court.

A family service plan entered after the issuance of the juvenile court's order in regard to the mother indicated that the children were present in the home during the incident in which the father pointed a gun at the mother. As part of the plan, the mother agreed not to allow the children to be unsupervised or to have any contact with the father until otherwise determined by DFCS or the juvenile court.

At the December 14, 2016, adjudication hearing in the father's case, DFCS called the mother to testify. The mother admitted contacting the police in response to the June 1 incident, which resulted in the father's arrest for aggravated assault. She stated that he came into their house at 5:00 a.m. and that she contacted the police because she did not feel safe. She stated that he was mad because she had left their

dog outside overnight. The children were in bed with the mother when the father came in. After a brief exchange, the father went back outside. She followed him outside, at which point the father pulled a gun on the mother.[2]

On cross-examination, the mother stated that when the father came into the bedroom that he did not hit or touch her or the children, nor did he curse at them. She also stated that he had never been aggressive or violent toward the children although he had been "aggressive" toward the mother. She stated that she was not afraid of the father. Although she admitted that there had been instances of altercations and domestic abuse by the father in the past, she stated that those incidents took place several years before the June 1 incident. She stated her belief that the father was not a danger to the children.

DFCS also presented testimony from the police detective who investigated the June 1 incident. The detective testified regarding his interview with the mother following the June 1 incident. He recounted the mother's description of the father's early-morning arrival at their house, including that the father pulled a gun on her and

---

[2] On cross-examination, the mother indicated that she could not recall if the father had actually pulled a gun on her because it was still dark outside during their altercation. However, she reported to the police that he had done so, and we must construe the evidence in the record in the light most favorable to the decision of the juvenile court.

threatened to kill her. The mother told the detective that the children were in bed when this incident occurred and that they had not witnessed any of the incident. The children were not interviewed by the police in regard to the incident.[3]

Following the adjudication hearing, the juvenile court issued an order of adjudication and temporary disposition as to the father's case. In that order, the juvenile court found that, on June 1, 2016, the father returned home around 5:00 a.m. after having been away from the house for at least 24 hours. He entered the bedroom where the mother was asleep with the children and expressed anger to the mother for leaving the family's dog outside overnight and because he had to "break in" to the house, as all doors were locked. The father went outside, and the mother followed him, after which an altercation ensued in which the father pointed a firearm at the mother and stated that he "ought to kill her." The father was later arrested and charged with aggravated assault. The juvenile court also noted that, as of the date of the order, the father had pending charges for aggravated assault stemming from a

---

[3] The children were interviewed by DFCS, but DFCS failed to provide the father with notice that the contents of that interview would be offered into evidence. As a result, the juvenile court sustained the father's objection to the admission of the children's interviews with DFCS into evidence.

separate incident in which he was alleged to have engaged in a shootout on a public street.

Based on this and other evidence, the juvenile court found that, as to the father, the children were dependent in that they had been abused and neglected and were in need of the protection of the court. The juvenile court also found that, due to its findings regarding the father's history of violence, visitation between the father and the children was to be supervised by DFCS. Following a second hearing, the juvenile court entered a final order of disposition and approval of the father's case plan which mirrored the court's previous finding that the children were dependent and that the father's visits with the children would be supervised by DFCS during the pendency of his case. This appeal followed.

1. The father first argues that there was insufficient evidence in the record to support the trial court's determination that the children are dependent. We agree.

OCGA § 15-11-2 (22) (A) provides, in relevant part, that a dependent child is "a child who . . . [h]as been abused . . . and is in need of the protection of the court[.]" OCGA § 15-11-2 (2) (E) defines "abuse" to include "[t]he commission of an act of family violence as defined in Code Section 19-13-1 in the presence of a child." As used in OCGA § 15-11-2 (2) (E), the term "presence" means "physically present or

able to see or hear." An act of family violence "includes a single act, multiple acts, or a continuing course of conduct." *Id*. OCGA § 19-13-1 (2) defines acts of family violence to include acts between spouses or persons who are parents of the same child, including the act of committing assault. A person commits the offense of assault when, *inter alia*, that person "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2).

The evidence in this case was sufficient to support a finding that the father committed an assault against the mother when he threatened her and pointed a gun at her outside their home on June 1, 2016. *See, e.g.*, *Harris v. State*, 342 Ga. App. 829, 831 (1) (805 SE2d 281) (2017) (evidence sufficient where defendant pointed firearm at victim in threatening manner, placing victim in fear). However, all testimony presented by DFCS indicated that this incident took place outside the presence of the children, as the uncontradicted record showed that they were inside the house asleep. There was no evidence that any of the children saw or heard the exchange between their mother and father. As a result, none of the testimony offered by DFCS established an act of abuse on the part of the father sufficient to warrant a finding of dependency.

Moreover, the mother's stipulation *in her case* failed to provide evidence in the father's case that an act of abuse sufficient to warrant a finding of dependency had occurred. We note that "[a] stipulation is simply a voluntary agreement by a party that it will not contest certain facts." *Fulton Cty. Bd. of Assessors v. Calliope Prop., LLC*, 315 Ga. App. 405, 408 (3) (727 SE2d 198) (2012) (citation omitted). Such an agreement relieves the opposing party of the need to offer evidence on the stipulated matter. *Id*.

In relation to the matter before us, the mother's stipulation is best characterized as agreement to a set of legal conclusions rather than to a specific set of facts or an agreed version of events. The stipulations entered in her case were essentially concessions by the mother that the allegations in the DFCS complaint were sufficient to warrant a finding that the children were dependent as to her. Although the juvenile court accepted those concessions in making its finding of dependency as to the mother, DFCS was still required to prove facts supporting a finding of dependency as to the father. It failed to do so.

The testimony presented by DFCS through the mother and the investigating detective failed to establish that the June 1 incident took place in the presence of the children. Indeed, that testimony indicated precisely the opposite. Although the

8

stipulation indicates that the children had been "subjected to multiple incidents of abuse," it does not identify or elaborate on those incidents or give any factual background that would allow the juvenile court to determine whether any of those incidents constituted acts of abuse as defined in OCGA § 15-11-2 (22) (A). Thus, given the breadth of the statements in the stipulation regarding the incidents, the juvenile court could not rely on the stipulation as evidence regarding the June 1 incident.

Because we determine that DFCS did not present evidence that the June 1 incident occurred in the children's presence, there was insufficient evidence to support a finding that the children had been abused. *See In re H. S.*, 285 Ga. App. 839, 842 (648 SE2d 143) (2007) (evidence insufficient where state presented no evidence that child witnessed domestic abuse between parents). We therefore reverse the juvenile court's finding of dependency as to the father.[4]

[4] We note that at the father's adjudication hearing, there was significant discussion on the record between the court, counsel for DFCS, and the father in regard to whether a probable cause proceeding pursuant to OCGA § 15-11-101 might be a more appropriate vehicle for this case in light of the preliminary stage of the evidence available to DFCS at the time, including the expressed desire of DFCS to have both the children and the parents evaluated by medical and psychological professionals. The father did not agree to undergo such assessments and did not agree to hold the DFCS petition in abeyance pending a probable cause hearing. The juvenile court permitted DFCS to decide whether it wished to proceed under its dependency

2. As we find that there was insufficient evidence to support the juvenile court's finding of dependency as to the father, we need not reach his second enumeration of error.

*Judgment reversed. Andrews, J., and Rickman, J., concur.*

---

petition or whether it preferred to move forward with a probable cause hearing under OCGA § 15-11-101 to determine whether there were grounds to order the father to undergo a domestic violence assessment. DFCS elected to proceed with the dependency proceeding.