**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 24, 2023**

# In the Court of Appeals of Georgia

A23A0585. IN THE INTEREST OF B. A., a child.

PHIPPS, Senior Appellate Judge.

The mother of B. A. appeals from the juvenile court's order finding B. A. to be a dependent child and continuing her custody with the Division of Family and Children Services ("DFCS"). Because the order was not supported by clear and convincing evidence of B. A.'s present dependency, we reverse.

The record shows that B. A. was born on November 12, 2021, to the mother and an unidentified father. On January 11, 2022, DFCS filed a dependency complaint and emergency request for protective custody of B. A., alleging as follows:

> [The mother] has a history of cocaine usage and prenatal exposure as she has tested positive for cocaine at birth in the past with her other children. [The mother] lacks the parental capacity as evidence[d] by[:] [her] whereabouts are currently unknown, previous history of substance

use which lead [sic] to her children being placed in foster care. The maternal grandmother has adopted her oldest due to [the mother's] . . . inability to provide for the child. [The mother] currently has 5 children, whom are currently in the care of the maternal grandmother. [The mother] currently has an open foster case; however, she is not working her current case plan.

That same day, the juvenile court signed a dependency removal order finding that removal of B. A. from the mother's custody was necessary to safeguard the child's welfare. DFCS was granted temporary custody of B. A. and placed the child with her maternal grandmother.

In February 2022, DFCS filed a dependency petition alleging substantially the same facts that were alleged in the emergency request for custody, except the dependency petition also alleged that B. A. had been "diagnosed with drug withdrawal syndrome." In early May 2022, the juvenile court entered two nearly identical status orders providing that "temporary custody of [B. A.] should continue in [DFCS]." These orders noted that the mother had been given "the opportunity through her foster care case as well as the open investigation to comply with services[;] however, the mother has been non-compliant with services."

A dependency hearing was held on May 24, 2022. The DFCS case worker who filed the dependency petition testified that she had spoken once with the mother, who reported that she had a place to live, wanted custody of B. A., and was able to care for her. The case worker did not meet with either the mother or B. A., and she had no firsthand knowledge about the mother's degree of compliance with a case plan developed for her other children. The case worker conceded that there was no evidence that the mother was still abusing drugs; that, contrary to the allegation in the dependency petition, B. A. in fact had shown no signs of withdrawal; and that there were "no physical . . . or mental concerns" about B. A.

The maternal grandmother testified that she picked B. A. up from the hospital shortly after her birth and has kept her, along with her siblings, ever since. According to the grandmother, the mother has not visited the children in person and has provided no support for B. A.

The mother testified that she went into emergency labor with B. A., delivered the baby at a hospital not equipped with labor and delivery facilities, and was told that she and the baby needed to transfer to a different hospital. The mother claimed that although she made arrangements for transportation to an appropriate hospital, a police officer prevented her from leaving, and a DFCS employee told her that her

3

only options were to sign a voluntary safety plan form allowing B. A. to be placed with the maternal grandmother pending an "investigation" or to have the child placed with unknown foster parents. The mother signed the form. The mother said that she spoke with her DFCS case worker about six weeks later and said that she was able to care for B. A. The mother further testified that, as of the day of the hearing, she had housing, employment, and supplies for B. A.; could care for B. A.; and was committed to working with DFCS on her other case plan. The mother explained that she lacked transportation and therefore had trouble traveling to the maternal grandmother's house, which is in a different city, to visit and bring supplies. The mother also testified that she tried several times to visit the children in person, but was told they were not available, and that she does visit the children virtually.

Following the hearing, the juvenile court entered an order finding that B. A. was dependent because the mother had presented no proof that she had completed a substance abuse or parental fitness assessment or that she had housing or employment. The court also found that even if the mother could not visit B. A., "she could have mailed money, sent a money order, or something to provide for the child." Accordingly, the juvenile court ordered that B. A. remain in the custody of DFCS and in the grandmother's care pending a further disposition hearing. The mother appeals.

4

"[T]he juvenile court may place a minor child in the protective custody of [DFCS] where the State shows, by clear and convincing evidence, that the child is a dependent child." *In the Interest of A. M. B.*, 361 Ga. App. 551, 554-555 (a) (864 SE2d 713) (2021) (citation and punctuation omitted). Relevant to this case, Georgia law defines a "dependent child" as one who "[h]as been abused or neglected and is in need of the protection of the court" or "[i]s without his or her parent, guardian, or legal custodian." OCGA § 15-11-2 (22) (A), (C). In determining whether a child is dependent, the juvenile court

> may consider evidence of past misconduct because the . . . court is not required to reunite a child with a parent in order to obtain current evidence of dependency or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency.

*In the Interest of T. Y.*, 357 Ga. App. 189, 196 (1) (850 SE2d 244) (2020) (citations and punctuation omitted). "This may be established by showing that the conditions upon which an earlier finding of [dependency] was based still exist at the time of the . . . hearing." *In the Interest of B. R. J.*, 344 Ga. App. 465, 473 (1) (a) (810 SE2d 630) (2018) (citation and punctuation omitted).

5

The mother argues that the juvenile court erred by finding that B. A. was dependent because DFCS offered no proof of such dependency. DFCS "concedes that the juvenile court's decision is based upon a record that lacks the quantum of evidence required" and that "neither the juvenile court's ruling nor the evidence on which it was based were legally sufficient to support . . . a finding [of dependency]." We agree. DFCS offered no evidence at the hearing that B. A. is presently dependent, and the juvenile court cited no such evidence in its order. Rather, the court highlighted the mother's failure to offer documentary proof, beyond her own testimony, that she is presently able to care for B. A. However, DFCS bore the burden of establishing B. A.'s continued dependency by clear and convincing evidence. See *In the Interest of G. R. B.*, 330 Ga. App. 693, 700 (769 SE2d 119) (2015) ("[T]he party who brings the petition alleging [dependency], *not* the parent from whose custody the child is being removed, carries the burden of proof.") (emphasis in original). By shifting the burden to the mother to disprove continued dependency, the juvenile court erred.

DFCS urges us to vacate the dependency order and remand for the juvenile court to "conduct further proceedings in accordance with the requirements of the Juvenile Code." Indeed, we generally follow this course when a juvenile court's order

6

does not contain the necessary findings of fact and conclusions of law to support the disposition. See, e.g., *In the Interest of S. W.*, 363 Ga. App. 666, 675 (5) (872 SE2d 316) (2022) ("Because the juvenile court failed to include the appropriate findings of fact and conclusions of law in . . . its . . . orders, we vacate those orders and remand the case to the juvenile court for resolution . . . using the proper standards and issuance of a proper order."); *In the Interest of T. Y.*, 350 Ga. App. 553, 561 (1) (829 SE2d 808) (2019) (vacating juvenile court's order and remanding for "appropriate findings of fact and conclusions of law" because the order "fail[ed] to indicate which facts support[ed] its conclusion"). In this case, however, the deficiency in the juvenile court's order is not simply an absence of adequate factual findings and legal conclusions; the deficiency is that the court's disposition is not supported by clear and convincing evidence in the record. Accordingly, we must reverse the juvenile court's dependency order. See *In the Interest of K. D.*, 344 Ga. App. 423, 427-428 (1) (810 SE2d 193) (2018) (reversing juvenile court's judgment of dependency because there was insufficient evidence to support it).

*Judgment reversed. Doyle, P. J., and Gobeil, J., concur.*

7